UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

---

|  |  |  |
|---|---|---|
| **DONNA LOVE**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. __3:21-cv-43__ |
| | : | |
| **GENERAL DYNAMICS INFORMATION** | : | |
| **TECHNOLOGY, INC.,** | : | |
| R/A: C T CORPORATION SYSTEM | : | |
| 4701 Cox Rd, Suite 400 | : | |
| Glen Allen, VA 23060 | : | **TRIAL BY JURY DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

---

## COMPLAINT

COMES NOW, the Plaintiff, Donna Love ("**Plaintiff**"), by and through her undersigned counsel and moves this Honorable Court for judgment against the Defendants, General Dynamics Information Technology, Inc. ("**Defendant**") on the grounds and praying for the relief hereinafter set forth:

### Parties

1.      Plaintiff, is, and at all times relevant hereto has been, a resident of the Commonwealth of Virginia, specifically residing at 8053 Princess Path Liverpool, NY 13090.

2.      Defendant is a Virginia corporation with a principal place of business located at 321 Hillsdale Drive, Charlottesville, VA 22901.

### Jurisdiction and Venue

1.      This action is brought by Plaintiff for damages on account of Defendant's discriminatory and retaliatory practices as prohibited by Title VII of the Civil Rights Act of

1

1964, 42 U.S.C. §§ 2000e *et seq*; 42 U.S.C §§1981 *et seq.*; and the Age Discrimination in Employment Act of 1967, 29 USC §§ 621 *et seq*.

2.  This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 *et seq*, 42 U.S.C §§1981 *et seq.*, and 29 USC §§ 621 *et seq*.

3.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's claims are so related to the claims within the Court's original jurisdiction that it forms the part of the same case or controversy.

4.  Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) and (d).

5.  Plaintiff has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

   a.  On or around March 26, 2021, Plaintiff filed a charge ("**Charge**") with the United States Equal Employment Opportunity Commission ("**EEOC**"), Charge No. 570-2021-01125, under the agencies' work sharing agreement.

   b.  As such, the Charge was timely filed with the EEOC well within three hundred (300) days from the latest date of discrimination relative to this matter.

   c.  Plaintiff received a copy of the "Notice of Right to Sue", dated August 16, 2021, by email on September 15, 2021, but it is unclear when or whether Plaintiff received a hardcopy by mail.

   d.  Even assuming arguendo that Plaintiff had received a copy of the "Notice of Right to Sue" on August 17, 2021, ninety (90) days from August 17, 2021 is Sunday, November 14, 2021.

e.    In receiving her "Notice of Right to Sue" on September 15, 2021, within ninety (90) days from Plaintiff's receipt of the "Notice of Right to Sue", or alternatively, pursuant to Federal Rule of Civil Procedure 6, the Complaint in this matter was timely filed with this Court.

## Statement of Facts

6.    Plaintiff was hired by Defendant in or around January 2011 in the Northeast Region (the "**Region**") as a Site Acquisition Manager with Defendant for their Special Projects Team.

7.    Plaintiff is a woman. At the time of Plaintiff's employment with Defendant ended, she was 56 years old.

8.    During her nine-and-a-half-year tenure with Defendant, Plaintiff received glowing performance reviews every year.

9.    As a Site Acquisition Manager, Plaintiff worked alongside other Special Projects Team Site Acquisition Managers in the Region, including, Greg Primeau ("**Mr. Primeau**") a male employee, Pauline Ewald ("**Ms. Ewald**") a female employee, and Mike Rebner ("**Mr. Rebner**"), a male employee (collectively, the "**Site Acquisition Managers**;" each a "**Site Acquisition Manager**"). The Site Acquisition Managers reported to two Project Managers, Joe Nagle ("**Mr. Nagle**") and Joe Jarvis ("**Mr. Jarvis**;" collectively the "**Project Managers**;" each a "**Project Manager**").

10.    In or around March 2019, the Special Projects Team for the Region was due to be restructured due to the resignation of Mr. Nagle, one of two project managers.

11.    In or around April 2019, Eric DeRiggi ("**Mr. DeRiggi**"), Vice President of Defendant, held a national call regarding company plans and strategy. The national call was not

supposed to be a specific presentation to advise of the new position, but merely a routine call (the "**Call**").

12.     In the Call, however, Mr. DeRiggi displayed a slide presentation that showed an organizational chart of the new corporate structure going forward. It created two new departments for the Region, Construction and Site Acquisition. The Special Projects Team was to be spit between the new departments, as appropriate.

13.     Mr. Jarvis, the remaining Project Manager, was promoted to Regional Manager of the Region.

14.     Mr. Premeau, a former Site Acquisition Manager, was promoted to Manager of the Site Acquisition Department for the Region.

15.     The organizational chart showed Plaintiff as a Site Acquisition Manager underneath Mr. Primeau and showed two contractors were to report directly to Ms Love, Ipunk Lee ("**Mr. Lee**") and Darrell Brannon ("**Mr. Brannon**").

16.     Plaintiff was upset by the restructuring of Defendant. Mr. Premeau had a known reputation for being inappropriate, rude, and disrespectful, especially to female employees.

17.     During Plaintiff's employment, Mr. Primeau was arrogant, condescending, demoralizing to her and the entire office and was boisterous and rude during daily meetings, including to Plaintiff.

18.     Immediately after Call, Mr. Jarvis called Plaintiff to apologize, and told her that he did not know that the new restructuring information was going to be shown on the Call.

19.     Because of his promotion, Ms. Ewald, the only other female Site Acquisition Manager, immediately resigned because Mr. Primeau was supposed to be her supervisor.

20.     Mr. Primeau proved Plaintiff's concerns correct after his promotion. He bullied

and humiliated her in front of other employees and contractors and disrespected her position of authority.

21. For example, although Mr. Lee and Mr. Brannon were supposed to report to Plaintiff, they actually reported directly to Mr. Primeau, purposefully circumventing Plaintiff in contravention of the corporate structure expressly identified in writing during the Call.

22. Mr. Primeau's bullying and harassment continued despite Plaintiff's complaints to her superiors.

23. Mr. Primeau frequently displayed favoritism towards Plaintiff's male subordinates and treated Plaintiff as if she didn't matter.

24. Mr. Primeau would uncharacteristically and frequently praise Mr. Lee in a manner he did not praise other employees, despite the quality of his work, and would grant him privileges that were not supposed to be enjoyed by contractors.

25. For example, he would allow Mr. Lee to sit in and provide input on hiring decisions and sit in on interviews. Contractors, like Mr. Lee, were not part of management and thus not allowed to sit on interviews or provide input on hiring decisions.

26. Upon information and belief, Mr. Primeau and Mr. Lee were actually married and were concealing such from Defendant.

27. Mr. Primeau would similarly also levy praise on Mr. Brannon.

28. Upon information and belief, Mr. Primeau and Mr. Brannon had a working relationship that predated their employment with Defendant.

29. Following the restructuring, Mr. Primeau continued his despicable behavior towards Plaintiff.

30. In addition to constantly being rude and unprofessional on a daily basis, he would

intentionally and unnecessarily pile on extra work onto Plaintiff in order for her to constantly be under pressure. For example, he would force her to do daily site meetings with him, which were very long and took a great deal of effort. This left Plaintiff much less time to do her routine work that she was expected to do on top of the site meetings.

31.    Plaintiff, the sole female Site Acquisition Manager, was the only Site Acquisition Manager who was required do participate in these site meetings on a daily basis.

32.    In or around the fall of 2019, Defendant was given new work from a client to perform long and in-depth file reviews, which resulted in forced overtime.

33.    During this time, Mr. Primeau and Mr. Lee were planning a lengthy vacation that spanned over a month. Mr. Primeau forced the team to complete this file review prior to his vacation.

34.    Because of the massive time crunch and long hours this imposed on the team, Ms Love was forced to cancel medical appointments and lost out on insurance reimbursements.

35.    In December of 2019, Mr. DeRiggi reached out to Plaintiff to see how the restructuring was panning out. Because of Plaintiff's burdensome schedule, she was not able to connect with him until January.

36.    In January 2020, Plaintiff was able to make contact with Mr. DeRiggi regarding the restructuring, and Plaintiff reported Mr. Primeau's abusive office conduct to Mr. DeRiggi.

37.    In response, Mr. DeRiggi expressed his apologizes to Plaintiff. He told Plaintiff that she was "highly regarded within Defendant," that Mr. Primeau's conduct was unacceptable, and that he would "take care of it."

38.    Despite Mr. DeRiggi's efforts, Mr. Primeau's conduct did not change and became even worse overtime.

6

39. The constant mental abuse and stress took a toll on Plaintiff. It caused Plaintiff to endure sleepless nights and to cry before, during, and after work.

40. In March 2020, Plaintiff called in sick to work in order to mentally deal with the abuse she suffered at work.

41. Plaintiff seldom called in sick to work during her over nine years of work at Defendant, and this prompted a call from Mr. DeRiggi to investigate further. Plaintiff again reported Mr. Primeau's abusive conduct to Mr. DeRiggi and explained that she could not endure to work under Mr. Primeau because of his obscene conduct.

42. Mr. DeRiggi appeared to understand, requested that Plaintiff take an additional day off to heal emotionally from the abuse, and told her that he would address the issue with Mr. Primeau.

43. After this call with Mr. DeRiggi, Mr. Primeau's conduct became worse.

44. In April 2020, Plaintiff reported the situation to Christine Rabe ("**Ms. Rabe**") in Defendant's human resources department.

45. Ms. Rabe was awestruck by Plaintiff's claims and immediately hired a third party investigator, Daniel Kvaviliashivili ("Mr**. Kvaviliashivili**"), to look into Plaintiff's allegations.

46. While the investigation was ongoing, Plaintiff was forced to seek immediate medical attention on May 21, 2020 due to heart palpitations caused by the stress and abuse she was forced to endure at work.

47. After Plaintiff's exam, it was determined that she had very high blood pressure and was diagnosed with depression.

48. Plaintiff's doctor recommended that Plaintiff either start taking medication to deal with the depression or remove herself from her stressful and abusive work environment.

49. On May 22, 2020, Plaintiff sent a resignation letter to Defendant via email to Mr. Primeau, Mr. Jarvis, Mr. Deriggi, and Steve Parker ("**Mr. Parker**"), the male director of the Special Projects Team, notifying them that Plaintiff would end her employment with Defendant in two weeks. Only Mr. DeRiggi reached out in response to wish Plaintiff well.

50. Plaintiff's last day at work for Defendant was June 5, 2020.

51. During Plaintiff's remaining two weeks at Defendant, she inquired with Mr. DeRiggi whether she could be transferred to a different Defendant office.

52. Mr. DeRiggi told Plaintiff that no such opportunities were available.

53. Despite Mr. DeRiggi's claims, Plaintiff found and applied for an open Site Acquisition Manager Position with Defendant, through their website at a different location, specifically, the southwest region.

54. After applying, Plaintiff reached out to Joe Nagle ("**Mr. Nagle**"), a Project Manager in for the southwest region, who had worked in the northeast region for Defendant in the past. He told Plaintiff that their office just received a lot of work, would love to bring her in, and said that he would speak to the Regional Manager about brining her onboard. Plaintiff never heard back from Mr. Nagle.

55. Weeks after applying, Plaintiff reached out to the recruiter who was the point of contact for that position, and was informed that Defendant was "holding the position open," i.e., Plaintiff was screened out for selection for the position.

56. After Plaintiff submitted her letter of resignation, John Bumpus ("**Mr. Bumpus"),** a Project Manager for the central region reached out to Plaintiff and told her that he would love to have her in the central region. Plaintiff responded that she was very interested. Again, Plaintiff never heard back from Mr. Bumpus.

57.    In or around mid-June 2020, Mr. Kvaviliashivili, the investigator, reached out to Plaintiff and told her that the investigation was still underway. Plaintiff informed him that she was forced to resign because of the conduct described in her human resources complaint. Despite this, he promised to inform Plaintiff when his findings were complete.

58.    Sometime later, Mr. Kvaviliashivili called Plaintiff and told her that her human resources complaint was found to be justified and that further disciplinary actions would be taken based on their findings.

59.    Upon information and belief, Mr. Primeau continued as Manager of the Site Acquisition Department, and Mr. Lee was transferred to another market.

60.    Plaintiff did not have any actual performance issues prior to her resignation.

61.    No prior formal written notices, warnings or disciplinary actions were ever taken prior to her resignation.

62.    All of Plaintiff's yearly performance ratings at Defendant were positive.

63.    The only negative feedback she was received was abusive, unfounded feedback by Mr. Primeau, who was trying to force Plaintiff out of Defendant because of her sex and age.

64.    Plaintiff's resignation was a constructive discharged caused by Mr. Primeau's conduct and by Defendant through the doctrine of *respondeat superior*.

65.    Further, Plaintiff was blacklisted by Defendant for her complaints to HR, which Mr. Kvaviliashivili identified to her as justified.

## COUNT I
### Sex and Age Discrimination in Violation
### of Title VII of the Civil Rights Act of 1964, as amended

66.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set

out here in full.

67.     Plaintiff is a female, and at the time of her resignation, was the only female Site Acquisition Manager in the Region.

68.     Plaintiff's work for Defendant was excellent. Specifically, she had positive annual evaluations every year, and never received any formal negative written notices, warning or disciplinary actions.

69.     As a result of this specific track record, Plaintiff performed her job satisfactorily, always met or exceeded the performance expectations of Defendant, and performed at this level at the time of her resignation.

70.     After the corporate restructuring, Plaintiff's direct supervisor, Mr. Primeau, exhibited a strong dislike of females. In fact, Plaintiff's only female counterpart for her position immediately quit when Mr. Primeau was promoted to Manager of the Site Acquisition Department.

71.     Plaintiff's male counterparts were either promoted, in the case of Mr. Primeau, or not subjected to targeted and cruel treatment by Mr. Primeau.

72.     Upon information and belief, other male counterparts, i.e. male Site Acquisition Managers, from other regions, e.g. the Southwest and Central regions, were able to transfer to different regions if a position was open.

73.     Upon information and belief, Defendant replaced Plaintiff with a younger, male employee after her resignation.

74.     Defendant is liable for Mr. Primeau's conduct through the doctrine of *respondeat superior*.

75.     Plaintiff was unable to transfer to a new region despite multiple positions being

open and despite Project Managers from those regions expressing their excitement to have Plaintiff join their team.

76.     Upon information and belief, Mr. Primeau or other male employees of Defendant influenced or directed Plaintiff's denial of future job opportunities with Defendant following her resignation.

77.     By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's sex, in violation of 29 U.S.C §2000e-2(a)(1).

78.     As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, high blood pressure, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

79.     As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

80.     In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

81.     As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

## COUNT II
### Sex Discrimination in Violation of
### 42 U.S.C. § 1981 Against Defendant

82.     Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

83.     But for Plaintiff's sex, Defendant would not have engaged in the unlawful conduct alleged herein.

84.     By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's sex, in violation of in violation of 42 U.S.C §1981 *et seq*.

85.     As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, high blood pressure, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

86.     As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that she has suffered a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

87.     In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

88.     As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by 42 U.S.C §1988(b).

## COUNT III
### Age Discrimination in Violation of ADEA 29 USC §621 *et seq.*

89.     Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

90.     Plaintiff was fifty (56) years old when she ended her employment with Defendant.

91.     Upon information and belief, Defendant replaced Plaintiff, and filled her position with a worker younger than Plaintiff.

92.     By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§621-634.

93.     Mr. Primeau's discrimination against Plaintiff on the basis of her age unreasonably interfered with the performance of her work for Defendant.

94.     Defendants' actions and failures to act were willful, malicious and in conscious disregard of Plaintiff's civil rights.

95.     As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, high blood pressure, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

96.     As a direct, foreseeable, and proximate result of Defendant's unlawful conduct,

Plaintiff has been injured in that he has suffered a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

97.     As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by 29 U.S.C. §626(b).

**COUNT IV**
**<u>Hostile Work Environment in Violation of</u>**
**<u>Title VII of the Civil Rights Act of 1694, as amended</u>**

98.     Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

99.     During her employment, Mr. Primeau would frequently make inappropriate and degrading remarks to Plaintiff.

100.    Plaintiff subjectively perceived Mr. Primeau and Defendant's treatment of her to be discriminatory, hostile and offensive; and the treatment was objectively discriminatory, hostile and offense.

101.    As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, elevated blood pressure, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

102.    As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be

14

proven at trial.

103.    In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

**COUNT V**
**Constructive Discharge in Violation of Title VII**
**of the Civil Rights Act of 1694, as amended, and the ADEA 29 USC §621** *et seq.*

104.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

105.    Mr. Primeau made conditions so intolerable that any similarly situated employee would have equally resigned (e.g., Ms. Ewald preemptively resigned based on her prior experience and knowledge of Mr. Primeau).

106.    Mr. Primeau's conduct towards Plaintiff was targeted based on her age and sex with the intent of having Plaintiff resign.

107.    Notwithstanding the foregoing, alternatively, if somehow Mr. Primeau's intent was not for Plaintiff to resign, he made the conditions so intolerable that Plaintiff quit anyway.

108.    As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, elevated blood pressure, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

109.    As a direct, foreseeable, and proximate result of Defendant's unlawful conduct,

Plaintiff has been injured in that he has suffered, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

110.     In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

111.     Plaintiff is also entitled to her reasonable attorney's fees and costs of suit.

**CONCLUSION**

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A.     Enter judgment on her behalf against Defendant;

B.     Award Plaintiff compensatory damages;

C.     Award Plaintiff her court costs, expenses, attorneys' fees, pre-judgment interest and post-judgement interest, as applicable;

D.     Declare that Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964;

E.     Declare that Defendant's conduct violated 42 U.S.C. § 1981;

F.     Declare that Defendant's conduct violated the Age Discrimination in Employment Act of 1967;

G.     Order that Defendants be required to promulgate an effective policy against such discrimination and to adhere thereto;

H.     Award Plaintiff punitive damages due to Defendant's willful, wanton, and

16

vindictive conduct; and

I.      Grant such other relief as this Court may consider just and proper.

## DEMAND FOR JURY TRIAL

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury of the within action, including the complaint, and any further pleadings.

Date: November 15, 2021                    Respectfully submitted,

                                           DONNA LOVE,


                                   By: /s/__Steven Anderson_____
                                       Robert Powers, Esq. (VSB No. 80822)
                                       Steven Anderson, Esq. (VSB No. 93037)
                                       MCCLANAHAN POWERS, PLLC
                                       3160 Falls Fairview Park Drive, Suite 410
                                       Falls Church, VA 22042
                                       Telephone: (703) 520-1326
                                       Facsimile:  (703) 828-0205
                                       Email: rpowers@mcplegal.com
                                              sanderson@mcplegal.com
                                              dmurphy@mcplegal.com
                                       *Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

I hereby certify that the forgoing FIRST AMENDED COMPLAINT is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: November 15, 2021            By: /s/__Steven Anderson_____
                                       Steven Anderson, Esq.
                                       *Counsel for Plaintiff*

17